# APPENDIX A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUADALUPE NAVARA and ALBERT STINSON, ) ) ) Plaintiffs, ) ) v. ) ) LONG BEACH MORTGAGE COMPANY; ) DEUTSCHE BANK NATIONAL TRUST ) COMPANY; NEW MILLENNIUM MORTGAGE ) GROUP CORP.; ROGELIO A. ASTUDILLO, ) a/k/a ROGER ASTUDILLO, ) ) Defendants. ) | 05 C 0864<br><br>Judge Filip<br><br>Magistrate Judge Denlow<br><br>**JURY DEMANDED** |

### THIRD AMENDED COMPLAINT – CLASS ACTION

### MATTERS COMMON TO MULTIPLE CLAIMS

#### INTRODUCTION

1. Plaintiff Guadalupe Navara brings this action against a "subprime" mortgage lender and two mortgage brokers to rescind a mortgage for violation of the Truth in Lending Act, 15 U.S.C. § 1601 ("TILA"), as amended by the Home Ownership & Equity Protection Act of 1994, 15 U.S.C. §§1602(aa) and 1639 ("HOEPA"), and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, and to recover damages for consumer fraud. Plaintiffs Guadalupe Navara and Albert Stinson bring suit for damages for violation of TILA.

#### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 (general federal question), 1337 (interstate commerce), and 1367 (supplemental jurisdiction), and 15 U.S.C.

1

§1640 (TILA). Defendants do business in the District and are deemed to reside here.

## PARTIES

3.  Plaintiff Guadalupe Navara owns and resides in a home at 2715 S. Kostner, Chicago, IL 60623.

4.  Plaintiff Albert Stinson owns and resides in a home at 5402 S. Shields, Chicago, IL 60609.

5.  Defendant Long Beach Mortgage Company ("Long Beach") is a foreign corporation authorized to do business in Illinois. It has an office at 1300 E. Woodfield Road, 6th floor, Schaumburg, IL 60173. It is engaged in the business of making "subprime" mortgage loans.

6.  Defendant Deutsche Bank National Trust Company ("Deutsche Bank") is a foreign corporation with its headquarters at 60 Wall Street, New York, NY 10005. It does business in Illinois. It is engaged in the business of, inter alia, buying "subprime" mortgage loans on Illinois properties.

7.  Defendant New Millennium Mortgage Group Corp. ("New Millenium") is engaged in the business of a mortgage broker. It does business in Illinois. On information and belief, it has offices at, among other places, 4959 West Belmont, Chicago, IL, 60614.

8.  Defendant Rogelio A. Astudillo a/k/a Roger Astudillo ("Astudillo") is a loan originator who originates loans for New Millennium. He does business as Astudillo Consulting Services at 4329 W. 26th Street, Suite 200, Chicago, IL 60623. Astudillo Consulting Services was once a corporation, but was dissolved in February, 2004, prior to the events complained of herein. Astudillo continued conducting the business as a proprietorship.

2

## FACTS RELATING TO PLAINTIFF NAVARA

9. On April 29, 2004, plaintiff Guadalupe Navara obtained a $50,000 mortgage loan, secured by her residence, from Long Beach Mortgage Company.

10. Plaintiff Guadalupe Navara obtained the loan for personal, family or household purposes, namely the refinancing of prior debts incurred for such purposes.

11. The following are documents relating to the Navara loan:

   a. Note, Exhibit A;

   b. Mortgage, Exhibit B;

   c. HUD-1 settlement statement, Exhibit C;

   d. Financial disclosure statement under TILA, Exhibit D;

   e. Notice of right to cancel, Exhibit E;

   f. Itemization of amount financed and prepaid finance charge, Exhibit F;

   g. A 1-4 Family Rider to the mortgage, Exhibit G.

12. Plaintiff Guadalupe Navara applied for the loan through a mortgage broker, New Millenium.

13. The loan originator at New Millennium who took the application and presented it to Long Beach was Astudillo.

14. The compensation received by New Millennium and Astudillo for brokering the loan was as follows:

   a. Loan origination fee of $800, listed on line 801 of the HUD-1.

   b. Processing fee of $500, shown on line 810 of the HUD-1;

c.  $8,000 to ACS, meaning Astudillo Consulting Services. Line 1305 of the HUD-1 (Exhibit C) shows a $26,000 payment to "ACS." Astudillo then paid $18,000 of this amount to plaintiff Guadalupe Navara.

15. The $26,000 payment to "ACS" listed on line 1305 of the HUD-1 (Exhibit C) constituted 52% of the $50,000 principal amount of plaintiff Guadalupe Navara's loan!

16. Long Beach; its closing agent for plaintiff Guadalupe Navara's loan, Citywide Title Corporation; New Millennium and Astudillo knew or should have known that the $26,000 charge on a $50,000 loan was fraudulent.

17. The closing agent's and/or the broker's knowledge is imputable to Long Beach.

18. The $8,000 plus the disclosed broker's fee of $1,300 constituted broker's compensation of 18.6% of the principal amount of the loan. This was exorbitant and unconscionable. Normal compensation for originating a loan is about $2,000.

19. All compensation paid to mortgage brokers is a finance charge for purposes of TILA, 15 U.S.C. §1605.

20. The TILA disclosures furnished to plaintiff Guadalupe Navara do not include the $8,000 paid to Rogelio A. Astudillo in the finance charge. See Exhibit F.

21. Inclusion of the $8,000 in the finance charge would have resulted in the "points and fees" openly exceeding the 8% that triggers application of HOEPA.

22. Among other things, HOEPA requires special advance disclosures of the annual percentage rate and monthly payment.

23. No attempt was made to comply with the special advance disclosure

4

requirements.

24. Inclusion of the $8,000 in the finance charge would also have resulted in a loan openly subject to the the Illinois High Risk Home Loan Act, 815 ILCS 137/1 ("HRHLA"). The HRHLA defines a "high risk home loan" as "a home equity loan in which . . . (ii) the total points and fees payable by the consumer at or before closing will exceed the greater of 5% of the total loan amount or $800... ." 815 ILCS 137/10. "Points and fees" include anything that is defined as "points and fees" under HOEPA.

25. The loan does not comply with the HRHLA, in that 815 ILCS 137/55 provides that " No lender shall transfer, deal in, offer, or make a high risk home loan that finances points and fees in excess of 6% of the total loan amount." All of the $9,300 received by New Millennium and Astudillo was financed.

26. The HRHLA also imposes advance disclosure requirements, 815 ILCS 137/95. No attempt was made to comply.

27. Plaintiff Guadalupe Navara has been directed to make payments to Washington Mutual Bank, FA. Washington Mutual claims a right to payments under the note and mortgage.

28. On information and belief, Deutsche Bank is the current owner of the loan. Plaintiff Guadalupe Navara was not notified that the loan was assigned to Deutsche Bank.

### FACTS RELATING TO ALBERT STINSON

29. On April 12, 2006, plaintiff Albert Stinson obtained two mortgage loans from Long Beach, for the purpose of financing the purchase of his prospective residence at 5402 S. Shields, Chicago, IL 60609. The building contains two units.

5

30. The following are documents relating to the first Stinson loan:

    a. Financial disclosure statement under TILA, Exhibit H;

    b. A 1-4 Family Rider to the mortgage, Exhibit I.

31. The following are documents relating to the second Stinson loan:

    a. Financial disclosure statement under TILA, Exhibit J;

    b. A 1-4 Family Rider to the mortgage, Exhibit K.

## COUNT I – TILA

32. Plaintiff Guadalupe Navara incorporates paragraphs 1-3 and 5-28.

33. This claim is against Long Beach Mortgage Company and Deutsche Bank.

34. The TILA disclosures made to plaintiff Guadalupe Navara grossly misstated the amount financed, finance charge and annual percentage rate, in that the compensation to New Millennium and Astudillo was not fully included in the finance charge and annual percentage rate, in violation of 15 U.S.C. §1638 and 12 C.F.R. §226.18.

35. In addition, no attempt was made to comply with the advance disclosure requirements of HOEPA.

36. Long Beach (and later Deutsche Bank) was aware or should have been aware of these violations. Regardless of their knowledge, the loan is subject to rescission.

## RIGHT TO RESCIND

37. Because the transaction was secured by plaintiff Guadalupe Navara's home, and was not entered into for purposes of the initial acquisition or construction of that home, it was subject to the right to cancel provided by 15 U.S.C. §1635 and 12 C.F.R. §226.23. Section 226.23 provides:

6

(a) <u>Consumer's right to rescind.</u>

(1) In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction, except for transactions described in paragraph (f) of this section.[fn]47

(2) To exercise the right to rescind, the consumer shall notify the creditor of the rescission by mail, telegram or other means of written communication. Notice is considered given when mailed, when filed for telegraphic transmission or, if sent by other means, when delivered to the creditor's designated place of business.

(3) The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures,[fn]48 whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first. In the case of certain administrative proceedings, the rescission period shall be extended in accordance with section 125(f) of the Act. [15 U.S.C. §1635(f)]

(4) When more than one consumer in a transaction has the right to rescind, the exercise of the right by one consumer shall be effective as to all consumers.

(b) <u>Notice of right to rescind.</u> In a transaction subject to rescission, a creditor shall deliver 2 copies of the notice of the right to rescind to each consumer entitled to rescind. The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:

(1) The retention or acquisition of a security interest in the consumer's principal dwelling.

(2) The consumer's right to rescind the transaction.

(3) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.

(4) The effects of rescission, as described in paragraph (d) of this section.

7

> (5) The date the rescission period expires. . . .
>
> (f) <u>Exempt transactions.</u> The right to rescind does not apply to the following:
>
>> (1) A residential mortgage transaction [defined in 15 U.S.C. §1602(w) as one where a "security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling"].
>>
>> (2) A credit plan in which a state agency is a creditor.

38. Plaintiff Guadalupe Navara was not given accurate financial disclosures, in that the finance charge, annual percentage rate, and amount financed were grossly inaccurate.

39. Plaintiff Guadalupe Navara has given notice of plaintiff's election to rescind.

40. Under 15 U.S.C. §1641, plaintiff Guadalupe Navara is entitled to assert the right to rescind against any assignee of the loan.

41. 15 U.S.C. §1635(g) provides:

**Additional relief**

> In any action in which it is determined that a creditor has violated this section, in addition to rescission the court may award relief under section 1640 of this title for violations of this subchapter not relating to the right to rescind.

WHEREFORE, plaintiff Guadalupe Navara requests that the Court enter judgment in favor of plaintiff Guadalupe Navara and against defendants for:

    a. A judgment voiding plaintiff Guadalupe Navara's mortgage, capable of recordation in the public records, and binding on all defendants;

    b. Statutory damages, including the enhanced HOEPA damages, for the underlying disclosure violations against Long Beach;

    c. If appropriate, statutory damages for failure to rescind;

8

   d. Attorney's fees, litigation expenses and costs.

   e. Such other or further relief as the Court deems appropriate.

## COUNT II -- CONSUMER FRAUD ACT

42. Plaintiff Guadalupe Navara incorporates paragraphs 1-3 and 5-28.

43. This claim is against Long Beach, New Millennium and Astudillo.

44. The HRHLA, 815 ILCS 137/135(b), provides that "Any knowing violation of this Act constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

45. Defendants knowingly violated the HRHLA by omitting the payment to "ACS" from the finance charge, thereby concealing the fact that they were making a loan subject to the HRHLA, by financing broker compensation exceeding 6%, in violation of the HRHLA, and by failing to provide the special advance disclosures required by the HRHLA.

46. Defendants also violated §2 of the Illinois Consumer Fraud Act, 815 ILCS 505/2 ("ICFA"), by misrepresenting (Long Beach) and causing the misrepresentation (New Millenium and Astudillo) of the finance charge, amount financed and annual percentage rate.

47. Defendants also violated § 2 of the ICFA by imposing and disguising a fraudulent charge on plaintiff Guadalupe Navara's loan proceeds. Defendants knew or should have known the charge was false and fabricated.

48. Defendants engaged in such conduct in the course of trade and commerce.

49. Defendants engaged in such conduct for the purpose of inducing reliance by plaintiff Guadalupe Navara, in the form of signing the loan documents, which plaintiff Guadalupe Navara did.

50. Plaintiff Guadalupe Navara was damaged as a result, in that she paid

exorbitant compensation to New Millennium and/or Astudillo, and was not provided with the information required by statute.

WHEREFORE, plaintiff Guadalupe Navara requests that the Court enter judgment in favor of plaintiff Guadalupe Navara and against defendants for:

    a. A judgment voiding plaintiff Guadalupe Navara's mortgage, capable of recordation in the public records, and binding on all defendants;

    b. Appropriate compensatory and punitive damages;

    c. Such other or further relief as the Court deems appropriate.

### COUNT III -- TILA -- CLASS CLAIM

51. Plaintiffs Guadalupe Navara and Albert Stinson incorporate ¶¶1-31.

52. This claim is against Long Beach, only.

### 1-4 FAMILY RIDER

53. The "1-4 Family Rider" creates a security interest in personal property that is not part of the real estate.

54. No such security interest is disclosed on the Truth in Lending disclosures.

55. The non-disclosure of the security interest in personal property on the Truth in Lending disclosures of plaintiffs and the members of the class defined below violates 15 U.S.C. § 1637 and 12 C.F.R. § 226.18.

### CLASS ALLEGATIONS

56. Plaintiffs bring this claim on behalf of a class. The class consists of (a) all natural persons (b) who signed a mortgage with Long Beach, (c) that takes a security interest in personal property by means of a one-to-four-family rider not limited to fixtures, (d) on or after

November 10, 2003 (one year prior to the original filing of this action on November 10, 2004).

57. The class members are so numerous that joinder is impracticable. On information and belief, there are more than 50 members of the class.

58. There are questions of law and fact common to the class members, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the failure to disclose the security interest violated TILA.

59. Plaintiffs' claim is typical of the claims of the class members. All are based on the same factual and legal theories.

60. Plaintiffs will fairly and adequately represent the interests of the class members. Plaintiffs have retained counsel experienced in consumer credit cases.

61. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible for most class members. Even if they were, there is no reason to have multiple lawsuits presenting the same issue. Furthermore, defendant Long Beach continued using the improper form and disclosures after it had been sued and after FNMA had issued a new form. Classwide liability is necessary to induce Long Beach to conform to TILA.

WHEREFORE, plaintiffs requests that the Court enter judgment in favor of plaintiffs and the class members and against defendants for:

      a. Statutory damages;

      b. Attorney's fees, litigation expenses and costs of suit;

      c. Such other or further relief as the Court deems proper.

s/ Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tara L. Goodwin
Al Hofeld, Jr.
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiffs demand trial by jury.

s/ Daniel A. Edelman
Daniel A. Edelman

t:\13379\pleading\3rd amended complaint_pleading.wpd

# EXHIBIT A

Case 1:05-cv-00864   Document 54-3   Filed 04/11/2006   Page 2 of 25

LOAN NO. 6247732-7891

# FIXED/ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.

April 29, 2004      ORANGE      CA
[Date]              [City]      [State]

2715 S KOSTNER AVE
CHICAGO, IL 60523
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. $ 50,000.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
LONG BEACH MORTGAGE COMPANY
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 9.300 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**
(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on July 1, 2004.
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on June 1, 2034, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at: P.O. Box 1093, Northridge, CA 91328

at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $ 413.16.   This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of June, 2006, and on that day every 6th month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the London interbank offered rates for six month dollar deposits in the London market based on quotations at five major banks ("LIBOR"), as set forth in the "Money Rates" section of The Wall Street Journal, or if the Money Rates section ceases to be published or becomes unavailable for any reason, then as set forth in a comparable publication selected by the Lender. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding Six and Three Fourths percentage point(s) ( 6.750 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.
The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
(D) Limits on Interest Rate Changes
The interest rate I am required to pay at the first Change Date will not be greater than 10.300 % or less than 9.300 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than One percentage points ( 1.000 %)

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR                    Page 1 of 3
                                                                 VMP MORTGAGE FORMS - (800)521-7291
4140255 (0111)
4110255 (01/05/02) LG

LOAN NO. 6247732-7891

from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than 15.300 %, which is called the "Maximum Rate" or less than 9.300 % which is called the "Minimum Rate".

(E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

(F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal before they are due. 

When I make a full or partial prepayment, I will notify the Noteholder in writing that I am doing so. Any partial prepayment of principal shall be applied to interest accrued on the amount prepaid and then to the principal balance of the Note which shall not reduce the amount of monthly installments of principal and interest (until reamortized as set forth in the Note at the next Payment Change Date) nor relieve me of the obligation to make the installments each and every month until the Note is paid in full. Partial prepayments shall have no effect upon the due dates or the amounts of my monthly payments unless the Noteholder agrees in writing to such changes.

6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

7. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

(D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address given a notice of that different address.

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR

4140265 (01/1)
4140265 (01/15/01) LG

Page 2 of 3

LOAN NO. 6247732-7891

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) Until my initial fixed rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument provides as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 17 of the Security Instrument shall instead provide as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)   _____ (Seal)
GUADALUPE M NAVARA             -Borrower                                -Borrower

_Guadalupe M Navara_ (Seal)   _____ (Seal)
                       -Borrower                                -Borrower

[Sign Original Only]

MULTISTATE FIXED/ADJUSTABLE RATE NOTE - LIBOR

4140265 (01/98)                          Page 3 of 3

# EXHIBIT B

Case 1:05-cv-00864   Document 54-3   Filed 04/11/2006   Page 6 of 25

*PREPARED BY AND*
Return To:

LONG BEACH MORTGAGE COMPANY
P.O. BOX 201085
STOCKTON, CA 95202

Doc#: 0413529209
Eugene "Gene" Moore  Fee: $84.00
Cook County Recorder of Deeds
Date: 05/14/2004 02:44 PM  Pg: 1 of 21

~~Prepared By:~~

LOAN NO. 6247732-7891

61050 ———————[Space Above This Line For Recording Data]———————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   April   29,   2004   , together with all Riders to this document.
(B) "Borrower" is
GUADALUPE M NAVARA, AN UNMARRIED WOMAN

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is   LONG BEACH MORTGAGE COMPANY

Lender is a corporation
organized and existing under the laws of   the State of Delaware

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3014  1/01

-6(IL) (0010)
Page 1 of 15          Initials: GMN
VMP MORTGAGE FORMS - (800)521-7291
TDIL01 (04/02/04) PC