# APPENDIX B

Case 1:07-cv-06545   Document 18-7   Filed 06/22/2007   Page 2 of 20

Case 1:06-cv-10887-WGY   Document 1-1   Filed 05/19/2006   Page 1 of 6

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

FILED
IN CLERKS OFFICE

2006 MAY 19 P 12: 54

U.S. DISTRICT COURT
DISTRICT OF MASS.

RONALD W. CARYE,   )
   )
   Plaintiff,   )   06 10887 WGY
   )
v.   )
   )   JURY DEMANDED
LONG BEACH MORTGAGE COMPANY,   MAGISTRATE JUDGE
   )
   Defendant.   )

RECEIPT # 72620
AMOUNT $350
SUMMONS ISSUED ✓
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 6/19/06

## COMPLAINT

### INTRODUCTION

1. Plaintiff brings this action to secure damages for violation of the Truth in Lending Act, 15 U.S.C. §1601 et seq. ("TILA") and implementing Federal Reserve Board Regulation Z, 12 C.F.R. part 226, by a high-interest "subprime" mortgage company.

### JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action under 15 U.S.C. §1640 (TILA), 28 U.S.C. §1331 (general federal question), and 28 U.S.C. §1337 (interstate commerce).

3. Venue in this District is proper under 28 U.S.C. §1391(b) and (c) because Defendant does business in this District. Defendant is therefore deemed to reside in this District under 28 U.S.C. §1391(c).

### PARTIES

4. Plaintiff Ronald W. Carye resides in a home which he owns at 35-37 Goodrich Rd., Jamaica Plain, Massachusetts. The property consist of two living units.

5. Defendant Long Beach Mortgage Company is a Delaware corporation with

its principal place of business at 1400 S. Douglas Road, Suite 100, Anaheim, CA 92806. Long Beach Mortgage Company's registered agent and office within Massachusetts is Corporation Service Company, 84 State Street, Boston, Massachusetts.

6. Defendant Long Beach Mortgage Company enters into more than 5 transactions per year in which credit is extended that is secured by the principal residence of a consumer and is used for purposes other than the initial acquisition or construction of the residence. Defendant Long Beach Mortgage Company lend in 49 states and has offices throughout the United States.

7. Defendant Long Beach Mortgage Company is therefore a creditor as defined in TILA and implementing Federal Reserve Board Regulation Z.

## FACTS

8. On or about October 21, 2005, Plaintiff obtained two loans from Long Beach Mortgage Company to refinance his residence. All of the proceeds of the loans were used for personal, family or household purposes.

9. In connection with these two transactions, Plaintiff signed or received respectively:

    (a) Two notes, Exhibits A and B;

    (b) Two mortgages, Exhibits C and D;

    (c) Two 1-4 Family Riders / Assignment of Rents, Exhibits E and F;

    (d) Two Truth in Lending statements, Exhibits G and H; and

    (e) Two HUD-1 Settlement Statements, Exhibit I and J;

10. Each of these documents is a standard form, commonly used in the

2

mortgage industry.

11. The Truth in Lending disclosure statement (<u>Exhibits G- H</u>) failed to disclose that the loan documents created an extensive security interest in personal property, by means of the 1-4 Family Rider / Assignment of Rents (<u>Exhibits E-F</u>). The 1-4 Family Rider creates a security interest in "building materials, appliances and goods of every nature whatsoever now or hereafter located in, or, or used, or intended to be used in connection with the Property . . . ." On its face, this would encompass an automobile garaged at Plaintiff's residence, as well as all of Plaintiff's furnishings and household goods.

## VIOLATION ALLEGED

12. The Truth in Lending statements issued to Plaintiff and each member of the class described below violated 15 U.S.C. §1638 and 12 C.F.R. §§226.17-226.18, entitling Plaintiff and the class members to damages.

## CLASS ALLEGATIONS

13. This claim is brought on behalf of a class.

14. The class is tentatively defined as all natural persons who satisfy the following criteria:

    a. They obtained a residential mortgage loan secured by real estate containing 1 or 2 dwelling units,

    b. The loan file shows that they live in the real estate,

    c. Their transaction was documented as one subject to the Truth in Lending Act,

    d. Their note and mortgage were originated by or assigned to Long Beach Mortgage Company,

3

e.  Their mortgage included a 1-4 Family Rider / Assignment of Rents creating a security interest in personal property not limited to rents,

f.  Their Truth in Lending statement does not disclose the security interest in personal property created by the Rider, and

g.  Their mortgage is dated on or after a date one year prior to the filing of this action.

15. The class is so numerous that joinder of all members is impractical. Upon information and belief, Long Beach Mortgage Company, has made over 200 loans secured by 2-4 unit properties during the year prior to the filing of suit. The form document represented by Exhibits E-F is generally used in connection with such loans. It is also occasionally used on loans secured by single-family homes.

16. There are questions of law and fact common to each class, which common issues predominate over any issues involving only individual class members. The principal issue is whether the class members' TILA disclosures were defective.

17. Plaintiff's claims are typical of those of the class members. All are based on the same facts and legal theories.

18. Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and actions involving unlawful business practices, including claims under the TILA. Neither Plaintiff nor Plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

19. Certification of the class under Fed.R.Civ.P. 23(b)(3) is appropriate in that:

4

  a. The questions of law or fact common to the members of the class predominate over any questions affecting only individual members.

  b. A class action is superior to other available methods for the fair and efficient adjudication of the controversy, in that:

    (1) Congress specifically provided for class actions as the principal means of enforcing TILA.

    (2) Most of the class members do not know about the violation.

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the class and against Defendant Long Beach Mortgage Company, for:

  a. Statutory damages as specified in 15 U.S.C. §1640.

  b. Attorney's fees, litigation expenses and costs.

  c. Such other or further relief as the Court deems appropriate.

Respectfully submitted,

_____
Christopher M. Lefebvre, # 629256
CLAUDE LEFEBVRE
CHRISTOPHER M. LEFEBVRE, PC
P.O. Box 479
Pawtucket, RI 02862
(401) 728-6060
(401) 728-6534 (FAX)

5

## JURY DEMAND

Plaintiff demand trial by jury.

                                                      Christopher M. Lefebvre

# Exhibit A

Case 1:06-cv-10887-WGY   Document 1-2   Filed 05/19/2006   Page 2 of 4

LOAN NO. 6595275-7923

# FIXED/ADJUSTABLE RATE NOTE
(LIBOR Index - Rate Caps)

**THIS NOTE PROVIDES FOR A CHANGE IN MY FIXED RATE TO AN ADJUSTABLE INTEREST RATE. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

October   21, 2005          ANAHEIM                    CA
[Date]                      [City]                     [State]

35-37 GOODRICH RD
JAMAICA PLAIN, MA   02130
[Property Address]

1. **BORROWER'S PROMISE TO PAY**
   In return for a loan that I have received, I promise to pay U.S. $ 664,000.00   (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
   **LONG BEACH MORTGAGE COMPANY**
   I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

2. **INTEREST**
   Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of   8.650 %. The interest rate I will pay may change in accordance with Section 4 of this Note.
   The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

3. **PAYMENTS**
   (A) Time and Place of Payments
   I will pay principal and interest by making payments every month.
   I will make my monthly payments on the first day of each month beginning on   **December 1, 2005**.
   I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on   November 1, 2045, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
   I will make my monthly payments at: **P.O. Box 2441, Chatsworth CA 91313-2441**

   or at a different place if required by the Note Holder.

   (B) Amount of My Initial Monthly Payments
   Each of my initial monthly payments will be in the amount of U.S. $ 4,943.65   . This amount may change.

   (C) Monthly Payment Changes
   Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

4. **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**
   (A) Change Dates
   The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of   November, 2007   , and on that day every   6th   month thereafter. Each date on which my adjustable interest rate could change is called a "Change Date."

   (B) The Index
   Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of the London interbank offered rates for six month dollar deposits in the London market based on quotations at five major banks ("LIBOR"), as set forth in the "Money Rates" section of *The Wall Street Journal*, or if the Money Rates section ceases to be published or becomes unavailable for any reason, then as set forth in a comparable publication selected by the Lender. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."
   If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

   (C) Calculation of Changes
   Before each Change Date, the Note Holder will calculate my new interest rate by adding   **Four and Ninety Nine Hundredths**   percentage point(s) (   4.990   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

MASSACHUSETTS FIXED/ADJUSTABLE RATE NOTE - LIBOR

-4140281 (9812)                          Page 1 of 3
                         ELECTRONIC LASER FORMS, INC. - (800)327-0545                 Initials: _____
4140281 (03/01/01) PC

Case 1:06-cv-10887-WGY   Document 1-2   Filed 05/19/2006   Page 3 of 4


LOAN NO. 6595275-7923

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

### (D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than **10.650** % or less than **8.650** %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than **One** percentage points ( **1.000** %) from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **14.650** %, which is called the "Maximum Rate" or less than **8.650** % which is called the "Minimum Rate".

### (E) Effective Date of Changes

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

### (F) Notice of Changes

The Note Holder will deliver or mail to me a notice of any changes in my adjustable interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## 5. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.

XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

## 6. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 7. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of **FIFTEEN** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000** % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

### (D) No Waiver by Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

MASSACHUSETTS FIXED/ADJUSTABLE RATE NOTE - LIBOR

-4140281 (9612)
41402612 (03/31/01) PC

Page 2 of 3

Initials: _____

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

11. **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) Until my initial fixed rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument provides as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 17 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 17 of the Security Instrument shall instead provide as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)    _____ (Seal)
RONALD W. CARYE          -Borrower                                           -Borrower

_____ (Seal)    _____ (Seal)
                         -Borrower                                           -Borrower

[Sign Original Only]

MASSACHUSETTS FIXED/ADJUSTABLE RATE NOTE - LIBOR


-4140281 (9812)
A14028A13 (03/31/01) PC

Page 3 of 3

# Exhibit B

LOAN NO. 6595276-7923

## NOTE

| October 21, 2005 | ANAHEIM | CA |
|---|---|---|
| *Date* | *City* | *State* |

| 35-37 GOODRICH RD | JAMAICA PLAIN | MA | 02130 |
|---|---|---|---|
| | *Property Address* | | |

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **166,000.00** (this amount will be called "principal"), plus interest, to the order of the Lender. The Lender is **LONG BEACH MORTGAGE COMPANY**

. I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note will be called the "Note Holder."

### 2. INTEREST

I will pay interest at a yearly rate of **11.250** %.
Interest will be charged on unpaid principal until the full amount of principal has been paid.

### 3. PAYMENTS

I will pay principal and interest by making payments each month of U.S. $ **1,612.30**
I will make my payments on the **first** day of each month beginning on **December 1, 2005**,
. I will make these payments every month until I have paid all of the principal and interest and any other charges, described below, that I may owe under this Note. If, on **November 1, 2035**
I still owe amounts under this Note, I will pay all those amounts, in full, on that date.
I will make my monthly payments at **P.O. Box 2441, Chatsworth CA 91313-2441**
or at a different place if required by the Note Holder.

### 4. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any of my monthly payments by the end of **fifteen** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **3.000** % of my overdue payment, but not less than U.S. $ **1.00** and not more than U.S. $ **48.37**. I will pay this late charge only once on any late payment.

(B) Notice from Note Holder
If I do not pay the full amount of each monthly payment on time, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date I will be in default. That date must be at least 10 days after the date on which the notice is mailed to me or, if it is not mailed, 10 days after the date on which it is delivered to me.

(C) Default
If I do not pay the overdue amount by the date stated in the notice described in (B) above, I will be in default. If I am in default, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount.

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

MASSACHUSETTS - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT   Form 3922

Page 1 of 3

-75(MA) (0208)   VMP MORTGAGE FORMS - (800)521-7291   Initials: _____
1D75-1MA (02/27/03) JMR

(D) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back for all of its costs and expenses to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 5. THIS NOTE SECURED BY A MORTGAGE

In addition to the protections given to the Note Holder under this Note, a Mortgage, dated **October 21, 2005**, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Mortgage describes how and under what conditions I may be required to make immediate payment in full of all amounts that I owe under this Note.

## 6. BORROWER'S PAYMENTS BEFORE THEY ARE DUE

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in a letter that I am doing so. A prepayment of all of the unpaid principal is known as a "full prepayment." A prepayment of only part of the unpaid principal is known as a "partial prepayment."

I may make a full prepayment or a partial prepayment without paying any penalty. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no delays in the due dates or changes in the amounts of my monthly payments unless the Note Holder agrees in writing to those delays or changes. I may make a full prepayment at any time. If I choose to make a partial prepayment, the Note Holder may require me to make the prepayment on the same day that one of my monthly payments is due. The Note Holder may also require that the amount of my partial prepayment be equal to the amount of principal that would have been part of my next one or more monthly payments.

## 7. BORROWER'S WAIVERS

I waive my rights to require the Note Holder to do certain things. Those things are: (A) to demand payment of amounts due (known as "presentment"); (B) to give notice that amounts due have not been paid (known as "notice of dishonor"); (C) to obtain an official certification of nonpayment (known as a "protest"). Anyone else who agrees to keep the promises made in this Note, or who agrees to make payments to the Note Holder if I fail to keep my promises under this Note, or who signs this Note to transfer it to someone else also waives these rights. These persons are known as "guarantors, sureties and endorsers."

## 8. GIVING OF NOTICES

Any notice that must be given to me under this Note will be given by delivering it or by mailing it by certified mail addressed to me at the Property Address above. A notice will be delivered or mailed to me at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by certified mail to the Note Holder at the address stated in Section 3 above. A notice will be mailed to the Note Holder at a different address if I am given a notice of that different address.

## 9. RESPONSIBILITY OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each of us is fully and personally obligated to pay the full amount owed and to keep all of the promises made in this Note. Any guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to do these things. The Note Holder may enforce its rights under this Note against each of us individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note. Any person who takes over my rights or obligations under this Note will have all of my rights and must keep all of my promises made in this Note. Any person who takes over the rights or obligations of a guarantor, surety, or endorser of this Note (as described in Section 7 above) is also obligated to keep all of the promises made in this Note.

LOAN NO. 6595276-7923

This Note has:

a Principal Sum of $    166,000.00
a Rate of Interest of    11.250    %.
A Period of Loan of    360 months
Periodic Due Dates of    monthly

**EXECUTED AS A SEALED INSTRUMENT**

_____(Seal)  
**RONALD W. CARYE**    -Borrower

_____(Seal)  
-Borrower

_____(Seal)  
-Borrower

_____(Seal)  
-Borrower

_____(Seal)  
-Borrower

_____(Seal)  
-Borrower

_____(Seal)  
-Borrower

_____(Seal)  
-Borrower

*(Sign Original Only)*

THE LAND WITH THE BUILDINGS THEREON NOW KNOWN AND NUMBERED AS 35-37 GOODRICH ROAD, SITUATED IN THAT PART OF BOSTON KNOWN AS JAMAICA PLAIN, MASSACHUSETTS, BEING SHOWN AS "PROPERTY OF E.A. HANSON" ON A PLAN DATED MAY 24, 1937 BY E.A. HANSON, ENGR., RECORDED WITH SUFFOLK COUNTY REGISTRY OF DEEDS, BOOK 5664, PAGE 27 BOUNDED AND DESCRIBED AS FOLLOWS:

SOUTHWESTERLY BY GOODRICH ROAD AS SHOWN ON SAID PLAN, FIFTEEN AND 0/10 (15.0) FEET;

SOUTHEASTERLY BY THE END OF GOODRICH ROAD AS SHOWN ON SAID PLAN, TWENTY AND 0/10 (20.0) FEET;

SOUTHWESTERLY BY LOT 3 AS SHOWN ON SAID PLAN, EIGHTY-NINE AND 53/100 (89.53) FEET;

NORTHWESTERLY BY LAND OF UNDESIGNATED OWNERS FORTY-THREE AND 58/100 (43.58) FEET;

SOUTHWESTERLY BY THE SAME, THIRTEEN AND 06/100 (13.06) FEET;

NORTHWESTERLY AGAIN BY THE SAME, FORTY-FIVE AND 02/100 (45.02) FEET;

NORTHEASTERLY BY THE SAME, SIXTY-FIVE AND 56/100 (65.56) FEET;

NORTHWESTERLY AGAIN BY THE SAME, SIX AND 7/10 (6.7) FEET;

NORTHEASTERLY BY LOT 9 AS SHOWN IN SAID PLAN, FIFTY-TWO AND 0/10 (52.) FEET; AND

SOUTHEASTERLY BY LOT 8 AS SHOWN ON SAID PLAN, SEVENTY-TW3O AND 0/10 (72.0) FEET.

FOR TITLE REFERENCE SEE DEED RECORDED IN SUFFOLK COUNTY REGISTRY OF DEEDS IN BOOK 35724, PAGE 239.

Subject to a first mortgge in the amount of $664,000.00 recorded prior hereto

Being the same premises conveyed to the herein named mortgagor (s) by deed recorded with Suffolk County Registry of Deeds in Book , Page .

# Exhibit C

Return To:

LONG BEACH MORTGAGE COMPANY
P.O. BOX 201085
STOCKTON, CA 95202

Loan No. 6595275-7923
Prepared By:

―――――――――――――――――――――[Space Above This Line For Recording Data]―――――――――――――――――――――

# MORTGAGE

DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated    October    21 , 2005    ,
together with all Riders to this document.
(B) "Borrower" is
RONALD W. CARYE

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is    LONG BEACH MORTGAGE COMPANY

Lender is a  Corporation
organized and existing under the laws of   the State of Delaware

MASSACHUSETTS-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3022  1/01

-6(MA) (0401)
Page 1 of 15    Initials:_____
    VMP Mortgage Solutions (800)621-7291
TDMA01 (09/30/05) PC



Lender's address is 1400 S. DOUGLASS RD., SUITE 100, ANAHEIM, CA 92806

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated October 21, 2005
The Note states that Borrower owes Lender
Six Hundred Sixty Four Thousand and no/100-------------------------------------------------- Dollars
(U.S. $ 664,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than November 1, 2045 .

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider [ ] Condominium Rider [ ] Second Home Rider
[ ] Balloon Rider [ ] Planned Unit Development Rider [X] 1-4 Family Rider
[ ] VA Rider [ ] Biweekly Payment Rider [ ] Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, with power of sale, the following described property located in the          SUFFOLK                              [Type of Recording Jurisdiction]
of            SUFFOLK                              [Name of Recording Jurisdiction]:
LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number:                                              which currently has the address of
            35-37 GOODRICH RD                                                              [Street]
            JAMAICA PLAIN                    [City], Massachusetts   02130    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.