| Creditor: | Applicant(s): |
|---|---|
| NEW MILLENNIUM MORTGAGE GROUP CORP. | GUADALUPE NAVARA |
| 2909 N. MILWAUKEE | |
| CHICAGO, IL 60618 | |

| Mailing Address: | Property Address: |
|---|---|
| GUADALUPE NAVARA | 2715 S. KOSTNER AVE |
| 2715 S. KOSTNER AVE | CHICAGO, IL 60623 |
| CHICAGO, IL 60623 | |

| Loan Number 99-0355 | Preparation Date: March 15, 2004 |
|---|---|
| Loan Type: Conventional | Estimated Interest Rate: 8.300 % |

| | | |
|---|---|---|
| Loan Amount | = $ | 50,000.00 |
| Prepaid Finance Charge | − $ | 2,853.10 |
| Amount Financed | = $ | 47,146.90 |

**ITEMIZATION OF PREPAID FINANCE CHARGE**

| | | | |
|---|---|---|---|
| | Credit Report | $ | 50.00 |
| 804 | Mortgage Broker Fee @ 2.000% | $ | 1,000.00 |
| 808 | Processing Fee | $ | 500.00 |
| 814 | Interest @ $12.7397/day for 15 days | $ | 191.10 |
| 901 | Mortgage Insurance Premium for 0 months | $ | 0.00 |
| 902 | Closing or Escrow Fee | $ | 200.00 |
| 1101 | Recording Fee | $ | 125.00 |
| 1201 | INVESTOR FEE (LONG BEACH MTG) | $ | 562.00 |
| 1303 | COURIER FEE (CITYWIDE TITLE) | $ | 75.00 |
| 1304 | ADMINISTRATIVE FEE (NMMGC) | $ | 150.00 |
| 1305 | | | |
| | Total Prepaid Finance Charge | $ | 2,853.10 |

**AMOUNT PAID ON YOUR ACCOUNT/PAID TO OTHERS ON YOUR BEHALF**

| | | | |
|---|---|---|---|
| 801 | Origination Fee | $ | 0.00 |
| 802 | Discount Fee | $ | 0.00 |
| 803 | Appraisal Fee | $ | 0.00 |
| 805 | Lender's Inspection Fee | $ | 0.00 |
| 806 | Mortgage Insurance Application Fee | $ | 0.00 |
| 807 | Assumption Fee | $ | 0.00 |
| 810 | Tax Related Service Fee | $ | 0.00 |
| 811 | Application Fee | $ | 0.00 |
| 812 | Commitment Fee | $ | 0.00 |
| 813 | Lender's Rate Lock-In Fee | $ | 0.00 |
| 815 | Underwriting Fee | $ | 0.00 |
| 816 | Wire Transfer Fee | $ | |
| 817 | Yield spread premium to mortgage broker | $ | 0.00 |
| 903 | Hazard Insurance Premium | $ | 0.00 |
| 904 | County Property Taxes | $ | 0.00 |
| 905 | Flood Insurance | $ | 214.50 |
| 1001 | Hazard Ins. @ $71.5000/mo. for 3 months | $ | 0.00 |
| 1002 | Mortgage Ins. | $ | 1,058.04 |
| 1004 | Tax & Assmt. @ $176.3400/mo. for 6 months | $ | 0.00 |
| 1005 | Flood Insurance | $ | −150.00 |
| 1008 | Aggregate Escrow Adjustment | $ | 0.00 |
| 1102 | Abstract or Title Search | $ | 0.00 |
| 1103 | Title Examination | $ | 0.00 |
| 1105 | Document Preparation Fee | $ | 0.00 |
| 1106 | Notary Fee | $ | 0.00 |
| 1107 | Attorney's Fee | $ | 295.00 |
| 1108 | Title Insurance | $ | 0.00 |
| 1202 | City/County Tax/Stamps | $ | 0.00 |
| 1203 | State Tax/Stamps | $ | 0.00 |
| 1204 | Intangible Tax | $ | 0.00 |
| 1301 | Survey | $ | 0.00 |
| 1302 | Pest Inspection | $ | 3.00 |
| 1306 | STATE OF ILLINOIS -DFI POLICY FEE | | |
| | Total Amount Paid on your account/Paid to others on your behalf | $ | 1,420.54 |
| | Total Estimated Settlement Charges | $ | 4,273.64 |

I/We hereby acknowledge reading and receiving a complete copy of this disclosure. I/We understand there is no commitment for the creditor to make this loan and there is no obligation for me/us to accept this loan upon delivery or signing of this disclosure.

_Guadalupe M Navara 4.29.04_          Date
GUADALUPE NAVARA          Date

          Date          Date

GENESIS 2000, INC. " WTI.0 " (800) 882-4894          Form Number (04/99)

# EXHIBIT G

Loan No. 6247732-7891

# 1-4 FAMILY RIDER
## Assignment of Rents

THIS 1-4 FAMILY RIDER is made this     29th     day of     April     , 2004
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to          **LONG BEACH MORTGAGE COMPANY**
                            **1400 S. DOUGLASS RD., SUITE 100**
                            **ANAHEIM, CA 92806**

(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

**2715 S KOSTNER AVE**
**CHICAGO, IL   60623**

[Property Address]

**1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

**A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the
Property described in the Security Instrument, the following items are added to the Property description, and shall
also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every
nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling,
electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain
rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in the
Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4
Family Rider and the Security Instrument as the "Property."

**B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a
change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change.
Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body
applicable to the Property.

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not allow any lien inferior
to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other
hazards for which insurance is required by Uniform Covenant 5.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first
sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining
covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument                    Form 3170 3/93

Page 1 of 2

VMP MORTGAGE FORMS - (800)521-7291

-57 (9304).01

1657-1 (05/24/93) PC

Loan No. 6247732-7891

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_Guadalupe M Navara_ (Seal)                              _____ (Seal)
GUADALUPE M NAVARA          -Borrower                                             -Borrower

_____ (Seal)                        _____ (Seal)
                            -Borrower                                             -Borrower

-157 (9304)                                    Page 2 of 2                        Form 3170 3/93
1657-2 (05/24/03) PC

# EXHIBIT H

# TRUTH-IN-LENDING DISCLOSURE STATEMENT

LENDER OR LENDER'S AGENT:
**LONG BEACH MORTGAGE COMPANY**
**1400 S. DOUGLASS RD., SUITE 100**
**ANAHEIM, CA 92806**

☐ Preliminary   ☒ Final
*DATE:* 04/12/06
*LOAN NO.:* 6711297-7891
*Type of Loan:* ADJUSTABLE RATE

BORROWERS:
**ALBERT STINSON**

ADDRESS:        **127 BELLWOOD AVE**
CITY / STATE / ZIP:   **BELLWOOD, IL 60104**
PROPERTY:       **5402 S SHIELDS AVE**
          **CHICAGO, IL  60609-6217**

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 10.212 % | $ 460,927.62 | $ 142,384.38 | $ 603,312.00 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 60 | 1,181.65 | Monthly beginning 06/01/06 | | | |
| 420 | 1,267.55 | Monthly beginning 06/01/11 | | | |

DEMAND FEATURE: ☒ This loan does not have a Demand Feature.   ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:
☒ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY: You are giving a security interest in the property located at: **5402 S SHIELDS AVE**
          **CHICAGO, IL  60609-6217**

ASSUMPTION: Someone buying this property ☒ cannot assume the remaining balance due under original mortgage terms.
☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES: $ 100.00

PROPERTY INSURANCE: Property hazard insurance is a required condition for this loan. You may purchase this insurance from any insurance company acceptable to the Lender.

☐ Hazard insurance is available through the lender at an estimated cost of $ ___ for ___ years.

LATE CHARGES: If your payment is more than **15** days late, you will be charged a late charge of **5.000** % of the overdue payment.

PREPAYMENT: If you pay off your loan early, you
☐ may  ☒ will not   have to pay a penalty.
☐ may  ☒ will not   be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.     e means estimate

I/We understand that this is neither a contract nor a commitment to Lend.
I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

___Albert Stinson___   ___04/12/2006___      _____
ALBERT STINSON      BORROWER / DATE        BORROWER / DATE

_____          _____
BORROWER / DATE             BORROWER / DATE

-765 (0112)     VMP MORTGAGE FORMS - (800)521-7291          12/01
© 2002 CBF Systems, Inc. The contents of this form in whole or in part are protected under the copyright laws of the United States.
TIL1 (03/30/05) JMR

EXHIBIT I

Loan No. 6711297-7891

# 1-4 FAMILY RIDER
## Assignment of Rents

THIS 1-4 FAMILY RIDER is made this  12th  day of  April  , 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security
Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure
Borrower's Note to

LONG BEACH MORTGAGE COMPANY
1400 S. DOUGLASS RD., SUITE 100
ANAHEIM, CA 92806
(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

5402 S SHIELDS AVE
CHICAGO, IL  60609-6217

[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument,
Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the
Property described in the Security Instrument, the following items are added to the Property description, and shall
also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every
nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the
Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling,
electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control
apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers,
disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain
rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property,
all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the
Property covered by the Security Instrument. All of the foregoing together with the Property described in the
Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4
Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a
change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change.
Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body
applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior
to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other
hazards for which insurance is required by Uniform Covenant 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Uniform Covenant 18 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, the first
sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining
covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument
Page 1 of 2
Form 3170 3/93

-57 (9304).01
1057-1 (05/24/99) PC
VMP MORTGAGE FORMS - (800)521-7291
Initials: 

Loan No. 6711297-7891

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_Albert Stinson_ _____ (Seal)          _____ (Seal)
ALBERT STINSON                        -Borrower                                      -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                      -Borrower

# EXHIBIT J

## TRUTH-IN-LENDING DISCLOSURE STATEMENT

LENDER OR LENDER'S AGENT:

**LONG BEACH MORTGAGE COMPANY**
1400 S. DOUGLASS RD., SUITE 100
ANAHEIM, CA 92806

☐ Preliminary    ☒ Final
DATE: 04/12/06
LOAN NO.: 6711299-7891
Type of Loan: CONVENTIONAL FIXED

BORROWERS:    **ALBERT STINSON**

ADDRESS:    **127 BELLWOOD AVE**
CITY / STATE / ZIP:    **BELLWOOD, IL 60104**
PROPERTY:    **5402 S SHIELDS AVE**
**CHICAGO, IL  60609-6217**

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost you. | Amount Financed<br>The amount of credit provided to you or on your behalf. | Total of Payments<br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 12.028  % | $ 97,849.54 | $ 36,095.66 | 133,945.20 |

PAYMENT SCHEDULE:

| NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | PAYMENTS ARE DUE BEGINNING |
|---|---|---|---|---|---|
| 360 | 372.07 | Monthly beginning 06/01/06 | | | |

DEMAND FEATURE:    ☒ This loan does not have a Demand Feature.    ☐ This loan has a Demand Feature as follows:

VARIABLE RATE FEATURE:

☐ This Loan has a Variable Rate Feature. Variable Rate Disclosures have been provided to you earlier.

SECURITY:    You are giving a security interest in the property located at:    **5402 S SHIELDS AVE**
**CHICAGO, IL  60609-6217**

ASSUMPTION:    Someone buying this property    ☒ cannot assume the remaining balance due under original mortgage terms
☐ may assume, subject to lender's conditions, the remaining balance due under original mortgage terms.

FILING / RECORDING FEES:    $  60.00

PROPERTY INSURANCE:    Property hazard insurance is a required condition for this loan.  You may purchase this insurance from any insurance company acceptable to the Lender.

☐ Hazard insurance is available through the lender at an estimated cost of $            for            years.

LATE CHARGES:    If your payment is more than    15    days late, you will be charged a late charge of    5.000    % of the overdue payment.

PREPAYMENT:    If you pay off your loan early, you
☐ may    ☒ will not    have to pay a penalty.
☐ may    ☒ will not    be entitled to a refund of part of the finance charge.

See your contract documents for any additional information regarding non-payment, default, required repayment in full before scheduled date, and prepayment refunds and penalties.                    e means estimate

I/We understand that this is neither a contract nor a commitment to Lend.
I/We hereby acknowledge reading and receiving a complete copy of this disclosure.

_Albert Stinson_                    04/18/06
**ALBERT STINSON**                    BORROWER / DATE                    BORROWER / DATE

BORROWER / DATE                    BORROWER / DATE

-765 (0112)
© 2002 CBF Systems, Inc.  The contents of this form in whole or in part are protected under the copyright laws of the United States.
TIL1-2A (04/29/05) JMB

VMP MORTGAGE FORMS - (800)521-7291                    12/01

# EXHIBIT K

Loan No. 6711299-7891

# 1-4 FAMILY RIDER
## Assignment of Rents

THIS 1-4 FAMILY RIDER is made this   12th   day of   April      2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note to

LONG BEACH MORTGAGE COMPANY
1400 S. DOUGLASS RD., SUITE 100
ANAHEIM, CA 92806
(the "Lender")

of the same date and covering the Property described in the Security Instrument and located at:

5402 S SHIELDS AVE
CHICAGO, IL  60609-6217
[Property Address]

1-4 FAMILY COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT. In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, panelling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."

B. USE OF PROPERTY; COMPLIANCE WITH LAW. Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification, unless Lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

C. SUBORDINATE LIENS. Except as permitted by federal law, Borrower shall not allow any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

D. RENT LOSS INSURANCE. Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5.

E. "BORROWER'S RIGHT TO REINSTATE" DELETED. Uniform Covenant 18 is deleted.

F. BORROWER'S OCCUPANCY. Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 shall remain in effect.

MULTISTATE 1 - 4 FAMILY RIDER - Fannie Mae/Freddie Mac Uniform Instrument          Form 3170 3/93
Page 1 of 2
 -57 (9304).01
1657-1 (05/24/95) PC      VMP MORTGAGE FORMS - (800)521-7291          Initials: A.S



Loan No. 6711299-7891

**G. ASSIGNMENT OF LEASES.** Upon Lender's request after default, Borrower shall assign to Lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents and revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument and (ii) Lender has given notice to the tenant(s) that the Rents are to be paid to Lender or Lender's agent. This assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (i) all Rents received by Borrower shall be held by Borrower as trustee for the benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all of the Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all Rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including, but not limited to, attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sums secured by the Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account for only those Rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing as to the inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control of and managing the Property and of collecting the Rents any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Security Instrument pursuant to Uniform Covenant 7.

Borrower represents and warrants that Borrower has not executed any prior assignment of the Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or a judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or a judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of Rents of the Property shall terminate when all the sums secured by the Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)        _____ (Seal)
ALBERT STINSON                        -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                                      -Borrower                                      -Borrower

-157 (9304)                Form 3170 3/93
1057-2 (05/24/99) PC

# APPENDIX B

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **ERIC SHELTON**, individually and on behalf all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>**LONG BEACH MORTGAGE COMPANY, a** Delaware corporation; and, **FIRST CAPITAL MORTGAGE CORPORATION**, an Illinois corporation,<br><br>          Defendants. | ) ) ) ) ) 06 cv 2323 ) ) ) Judge Blanche Manning ) ) ) Magistrate Geraldine Soat Brown ) ) ) ) ) |

## **FIRST AMENDED COMPLAINT FOR DAMAGES**

Now Comes, ERIC SHELTON, Plaintiff by and through his attorney, Lloyd Brooks, to complain against the above captioned defendants as follows:

### **Nature of the Action**

1.  Plaintiff brings this action against a mortgage lender and a mortgage broker for their violations of federal and Illinois state law regarding the payment and/or receipt of kickbacks in connection with the closing of federally related mortgage transaction under the Real Estate Settlement Practices Act of 1974 and Illinois Consumer Fraud and Deceptive Business Practices Act.  In addition Plaintiff brings this action on behalf of a class of individuals against the mortgage lender for its violation of the Truth in Lending Disclosure Act by failing to properly disclose its security interest in personal property in connection with a federally related real estate mortgage transaction.

### **Jurisdiction and Venue**

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1331 as this action arises under the laws of the United States.  This Court has jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367 as they are so related to Plaintiff's causes of action that they form the same case and controversy.

3.    This Court has jurisdiction over these defendants as they all are doing business in this State and have availed themselves of its benefits and protections.

4.    Venue is proper in this Court as all of the defendants reside within this judicial district and a substantial portion of the events giving rise to this action occurred within this judicial district.

### Parties

5.    Eric Shelton ("Eric") is a resident of Chicago, Illinois.

6.    **Long Beach Mortgage Company** ("Long Beach") is a Delaware corporation with its principal place of business located in Stockton, California and does business in the State of Illinois with offices located in Itasca, Illinois.  Long Beach originates consumer loans secured by owner occupied residential real estate of 1 to 4 units.

7.    **First Capital Mortgage Corporation** ("First Capital") is an Illinois corporation with offices located in Chicago, Illinois.  First Capital acts a mortgage broker placing and/or procuring consumer loans secured by owner occupied residential real estate of 1 to 4 units.

### Common Facts

8.    In May of 2005 defendant First Capital began the process of procuring loans in a scheme to defraud Eric.  The scheme involved deceiving Eric into executing certain documents that would purport to obligate Eric to purchase a 2 unit building located at 6800 S. Artesian, Chicago, Illinois.  The scheme also involved deceiving Eric into executing certain documents obligating Eric to repay two loans totaling $257,000 secured by the real estate.

9.    Defendant First Capital prepared and submitted a loan application to defendant Long Beach, without Eric's knowledge or authorization.

10.   On July 12, 2005 a closing of this purported transaction took place. A copy of the HUD-1 Settlement Statement is attached to this pleading as Exhibit A.

11.   As part of the Mortgage documents Long Beach required Eric to execute a "1 – 4 Family Rider". A copy of the Rider is attached as Exhibit B to this pleading.

12.   As part of the mortgage documents Long Beach provided Eric with a Truth In Lending Act Disclosure. A copy of the TILA disclosure is attached as Exhibit C to this pleading.

13.   Unbeknownst to Eric, Long Beach and First Capital had previously entered into a scheme whereby First Capital would refer business to Long Beach in exchange for Long Beach providing First Capital with a yield spread premium for such referrals.

14.   First Capital in fact referred the loan application for Eric to Long Beach and First Capital received a yield spread premium of $2,056.00 from Long Beach in addition to the $3,256.00 in loan fees, in connection with the subject transaction.

15.   By definition, a yield spread premium is a "bonus" paid to a mortgage broker for the arranging of a loan whereby the interest rate paid by the borrower is in excess of the interest rate that the borrower would otherwise qualify for.

16.   The payment of a yield spread premium is a kickback from the lender to the broker for the referral of business and also for the agreement to increase the interest rate on the borrower above that which the borrower might otherwise qualify for.

17.   First Capital and Long Beach did not disclose to Plaintiff that he qualified for an interest rate lower than the one he was charged for the subject loans.

18.   First Capital and Long Beach did not disclose to Eric that First Capital was going to receive additional compensation outside of closing by having Plaintiff agree to pay a higher than necessary interest rate for the loans.

19.     First Capital and Long Beach did not disclose to Eric that they had entered into a scheme involving the exchange of loan referrals for the payment of yield spread premiums.

20.     The amount of total compensation to First Capital did not reasonably relate to the value of the services provided by First Capital and is in excess of what other mortgage brokers in a similar transaction would be paid.

### Count I
### Payment of Kickback in Violation of RESPA
### (Against Long Beach Mortgage Company)

21.     Plaintiff realleges paragraphs 1 – 20 as though they were fully realleged herein.

22.     The Real Estate Settlement Practices Act provides in pertinent part:

No person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service involving a federally related mortgage loan shall be referred to any person.  12 U.S.C. 2607(a).

23.     Long Beach agreed to pay a fee to First Capital that was in excess of any amount First Capital reasonably should receive for its services.

24.     The amount Long Beach paid was to compensate First Capital for referring the loan.

25.     Such a payment is in violation of RESPA's bar against referral fees.

26.     Section 2607(d)(2) of RESPA reads in pertinent part:

Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

27.     In addition Section 2607(d)(5) of RESPA allows a successful plaintiff the recovery of their reasonable attorney's fees and litigation costs.

WHEREFORE Plaintiff requests this Court enter judgment in his favor and against LONG BEACH MORTGAGE COMPANY in an amount of three times the unlawful payment or

$6,168.00, (b) award Plaintiff his attorney's fees and costs of litigation, and (c) other relief this Court finds reasonable and just.

## Count II
### Reciept of Kickback in Violation of RESPA
### (Against First Capital Mortgage Corporation)

28.     Plaintiff realleges paragraphs 1 – 20 as though they were fully realleged herein.

29.     The Section 2607(b) of the Real Estate Settlement Practices Act reads in pertinent part:

> No person shall give and no person shall accept any portion, split, or percentage of any charge made or received for the rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed.

30.     First Capital never received Eric's authorization to act as a mortgage broker on his behalf.

31.     First Capital did not properly disclose to Eric that they were being compensated for any services at all.

32.     Nonetheless, First Capital accepted funds in connection with the closing which took place on July 12, 2005 including: (1) Origination Fee of $2,481.00; (2) Processing Fee of $500.00; (3) Broker Application Fee of $275.00; and, (4) yield spread premium of $2,056.00.

33.     First Capital acceptance of these amounts is in violation of RESPA's bar to referral fees and fee splitting for services.

34.     Section 2607(d)(2) of RESPA provides in pertinent part:

> Any person or persons who violate the prohibitions or limitations of this section shall be jointly and severally liable to the person or persons charged for the settlement service involved in the violation in an amount equal to three times the amount of any charge paid for such settlement service.

35.     In addition Section 2607(d)(5) of RESPA allows a successful plaintiff the recovery of their reasonable attorney's fees and litigation costs.

WHEREFORE Plaintiff requests this Court enter judgment in his favor and against FIRST CAPITAL MORTGAGE CORPORATION in an amount of three times the unlawful payment received or $15,936.00, (b) award Plaintiff his attorney's fees and costs of litigation, and (c) other relief this Court finds reasonable and just.

### Count III
### Violation of Illinois Consumer Fraud and Deceptive Business Practices Act
### (Against Long Breach and First Capital)

36.    Plaintiff realleges paragraphs 1 – 20 as though they were fully realleged herein.

37.    The Illinois Consumer Fraud and Deceptive Business Practices Act   reads in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

38.    First Capital:

a)    misrepresented to Eric the amounts of fees he would be charged in connection with the loans;

b)    failed to disclose to Eric that they had entered into a scheme with Long Beach, whereby First Capital would obtain additional compensation for referring loan business to Long Beach;

c)    failed to disclose to Eric that he was paying a higher than market rate interest rate on the loans;

d)    failed to disclose to Eric that they were going to obtain a higher profit from the loans due to the increased interest rate; and

e)    charged a fee in connection with the loans well in excess of the reasonable market rate for the services they provided.

39.    Long Beach:

a)    entered into a scheme with First Capital to refer Eric's;

b)    paid First Capital a kickback in exchange for its loan referral;

c)    failed to disclose to Eric its participation in the scheme; and,