**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KENNETH MASON and, | ) | |
| JULIA WATKINS, | ) | |
| | ) | Civil Action No. 1:07-cv-06545 |
| | ) | MDL No. 1876 |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Judge Wayne R. Andersen |
| | ) | |
| LONG BEACH MORTGAGE COMPANY; | ) | |
| and DEUTSCHE BANK NATIONAL TRUST | ) | |
| COMPANY; | ) | |
| Defendants. | ) | |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

Plaintiffs, Kenneth Mason and Julia Watkins, submit the following memorandum in opposition to defendants' motion to dismiss.

**INTRODUCTION**

Mr. Mason and Ms. Watkins are consumer-borrowers who obtained a mortgage loan secured by their residence in September 2005 from defendant Long Beach Mortgage Company ("Long Beach") for personal, family and household purposes. (Compl., ¶¶ 8-9).

Long Beach did not provide the plaintiffs with properly dated copies of the Notices of Right to Cancel forms. Plaintiffs allege that this failure violates the Truth In Lending Act ("TILA"), 15 U.S.C. § 1635, and implementing Federal Reserve Board Regulation Z, 12 C.F.R. § 226.23. 12 C.F.R § 226.23 states:

> **(b)(1) Notice of right to rescind.  In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered in**

1

**electronic form in accordance with the consumer consent and other applicable provisions of the E-Sign Act). The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:**

**. . . (v) The date the rescission period expires.**

Long Beach also had Mr. Mason and Ms. Watkins sign a form document entitled "1-4 Family Rider," which purported to create a security interest not only in Mr. Mason and Ms. Watkins' real property but also in all of their personal property located at their address. (Compl., ¶ 26, Ex. B). However, Long Beach did not disclose on the Truth In Lending disclosure statement it provided to Mr. Mason and Ms. Watkins the security interest taken in all of their personal property. (Compl., ¶ 27, Ex. C).

Mr. Mason and Ms. Watkins allege that this failure to disclose a security interest in personal property on the Truth in Lending Statement violates TILA, 15 U.S.C. § 1601 and § 1637, and Regulation Z, 12 C.F.R. § 226.18. Courts have held this violates TILA for at least fifteen years. Romaker v. Crossland Mortgage Corp., No. 94 C 3328, 1995 U.S. Dist. LEXIS 22252, *24-25 (N.D. Ill. Nov. 3, 1995) ("[F]ailure to either remove the overbroad language or acknowledge the full extent of the interest in the TILA statement constitutes a misdisclosure of the security interest in violation of TILA."). 12 C.F.R. § 226.18 states:

**For each transaction the creditor shall disclose the following information as applicable:**

**. . . (m) *Security interest*. The fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type.**

Long Beach has moved to dismiss Mr. Mason and Ms. Watkins' complaint on three grounds: 1) the grounds that plaintiffs' TILA claim is time-barred by the applicable statute of

2

limitations; 2) even if the TILA claim is not time-barred, Long Beach was not required to disclose the personal property as a security interest; and, 3) regarding plaintiffs' rescission claim, the plaintiff's signed properly dated copies of the Notice of Right to Cancel and thus lack the right to rescind the loan.

As explained below, Long Beach's motion must be denied because: 1) plaintiffs' TILA claim is not time-barred, as the statute of limitations was tolled by the filing of a putative class action; 2) the language in the Rider is overbroad and encompasses items that cannot be categorized as mere incidental interests, thus requiring disclosure under TILA as a security interest in personal property; and, 3) plaintiffs may rescind the loan because they were not provided with properly dated copies of the Notice of Right to Cancel, as required by TILA and Regulation Z.

## **ARGUMENT**

## I.    **TILA CLAIM IS NOT TIME-BARRED BECAUSE A PUTATIVE CLASS ACTION SUIT TOLLED THE APPLICABLE STATUTE OF LIMITATIONS.**

Plaintiffs concede that they filed their lawsuit outside the applicable one-year statute of limitations period, but assert that the filing of a putative class action suit tolled the limitations period. The instant case commenced on March 21, 2007, more than one year after the closing of plaintiffs' mortgage on September 28, 2005. But the related class action, Navara v. Long Beach Mortgage Corp., No. 05 C 864 (N.D. Ill.), was filed on February 11, 2005 and covers relevant transaction occurring on or after November 10, 2003, including plaintiffs' mortgage. Thus, the statute of limitations otherwise applicable to plaintiffs was tolled beginning on February 11, 2005 and remains tolled to date, as a class has yet to be certified.

Long Beach acknowledges the principle first announced by the Supreme Court in American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), that the filing of a class action suit

3

tolls the limitations period for all class members. Defendants' Memorandum in Support of Motion to Dismiss ("Defs' Mem."), p. 3.

In <u>American Pipe</u>, the Court stated that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554. Later, the Court quoted this language in <u>Crown, Cork & Seal Co., Inc. v. Parker</u>, 462 U.S. 345, 353-54 (1983), in reiterating the <u>American Pipe</u> class action tolling principle. But the Court has not decided whether this principle applies to class members who file individual suits prior to a decision on class certification. <u>In re Worldcom Securities Litigation</u>, 496 F.3d 245 (2d Cir. 2007).

Long Beach contends that this principle should not be applied in this matter because Mr. Mason and Ms. Watkins filed this suit prior to a decision on class certification in the related class action suit. Defs.' Mem., p. 3. To support this argument, Long Beach relies on one circuit court case and several district court cases holding that class action tolling does not apply in this situation. Defs.' Mem., pp. 3-4. These cases all argue that applying tolling in this situation would not further the purposes of <u>American Pipe</u>. <u>See</u>, <u>e.g.</u>, <u>Wyser-Pratte Mngmnt. Co. v. Texlon Corp.</u>, 413 F.3d 553, 567-69 (6th Cir. 2005); <u>In re Enron Corp. Securities & ERISA Litig.</u>, 465 F. Supp. 2d 687, 715-16 (S.D. Tex. 2006).

But recently, the Second Circuit addressed the very issue before this court and held that class action tolling does apply to class members filing individual suits prior to a decision on class certification. <u>In re Worldcom</u>, 496 F.3d 245, 2007 U.S. App. LEXIS 17797, *26. In <u>In re Worldcom</u>, the court stated that "[n]othing in the Supreme Court decisions described above suggests that the rule should be otherwise for a plaintiff who files an individual action before certification is

resolved." 496 F.3d 245, 2007 U.S. App. LEXIS 17797, *27.

In re Worldcom even led District Court Judge Blackburn of the District of Colorado to change his mind on this issue and apply class action tolling to a case involving similar facts to the instant case. Shriners Hosps. for Children v. Qwest Communs. Int'l, Inc., No. 04-cv-00781-REB-KLM, 2007 U.S. Dist. LEXIS 70782, *10 (D. Colo. Sept. 24, 2007). In it, Judge Blackburn stated, "[h]aving reviewed this issue again, and in light of the Second Circuit's recent opinion in In re Worldcom Securities Litigation, I conclude that American Pipe tolling is applicable to SHC, even though SHC filed Shriners I while the issue of class certification still was pending in In re Qwest." Id.

Long Beach also argues that it would be inequitable to allow tolling in this case. Defs.' Mem., p. 4 (citing In re Brand Name Prescription Drugs Antitrust Litig., No. 94-C 897, MDL 997, 1998 WL 47416, *8 (N.D. Ill. Aug. 6, 1998). But as the court in Schimmer v. State Farm Mutual Auto. Ins. Co., No. 05-cv-02513-MSK, 2006 U.S. Dist. LEXIS 60497, *17 (D. Colo. Aug. 15, 2006) (holding that class action tolling is applicable to class members prior to a decision on class certification), points out, class action tolling is not an equitable doctrine. "The problem with Wyser-Pratte, however, is that it treats class action tolling as an equitable doctrine in which fairness considerations drive its application," but "class action tolling is legal, rather than equitable." Id.

Even the Seventh Circuit acknowledges that the Supreme Court's statement that "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action" should be taken at "face value." In re Worldcom, 496 F.3d 245, 2007 U.S. App. LEXIS 17797, *27 (quoting Crown, Cork, 462 U.S. at 353-54). In Hemenway v. Peabody Development

5

Co., 159 F.3d 255, 266 (7th Cir. 1998), Judge Easterbrook wrote for the panel that "[w]hat American

Pipe . . . establish[es] is that until class certification is denied, the members of the putative class

receive the same treatment (for statute of limitations purposes) as do the named plaintiffs who seek

to represent the class."

Because Mr. Mason and Ms. Watkins are putative class members of the related class

action, Navara, 05 C 864 (N.D. Ill.), the applicable statute of limitations is tolled in the instant

matter and plaintiffs' claim is not time-barred.  Accordingly, Long Beach's motion to dismiss Count

II must be denied on this basis.

Finally, the logic behind Long Beach's position is obscure, to say the least.  The class

notice in any case with statutory damage caps, such as TILA, must disclose the greater recovery

available if one sues individually.  Sarafin v. Sears, Roebuck & Co., 73 F.R.D. 585, 588 (N.D. Ill.

1977).  A person receiving the notice and learning of their rights may want to sue individually.  If

the person learns of their rights beforehand and makes exactly the same decision, how is the

defendant harmed by them promptly advising defendant of their intention?

## II.    RIDER CREATED A SECURITY INTEREST, WHICH REQUIRES DISCLOSURE UNDER TILA.

Defendant Long Beach argues that "the 1-4 Family Rider creates only incidental

interests that cannot be disclosed under TILA and Regulation Z."  Defs.' Mem., p. 4.  But Long

Beach's argument has already been rejected by all authorities in this and other districts that have

ruled on the issue.  E.g., Leon v. Washington Mutual Bank, 164 F. Supp. 2d 1034, 1039

(N.D. Ill. 2001); Navara v. Long Beach Mrtg. Co., No. 05 C 864, 2006 U.S. Dist. LEXIS 4908, *21-

22 (N.D. Ill. Jan. 26, 2006); see also Romaker v. Crossland Mortgage Corp., No. 94 C 3328, 1995

U.S. Dist. LEXIS 22252 (N.D. Ill. Nov. 3, 1995); Williams v. Gelt Financial Corp., 232 B.R. 629,

637 (Bankr. E.D. Pa. 1999).  In fact, no court anywhere has sided with Long Beach yet.

A.    **Under TILA, Accurate Disclosure of All Security Interests is Mandatory.**

Long Beach's failure to disclose on plaintiff's TILA disclosure statement the interest it took in plaintiffs' personal property by means of the 1-4 Family Rider to plaintiffs' mortgage is a clear violation of TILA.  Accurate disclosure of security interests is mandatory.  <u>See</u> 15 U.S.C. §1638(a)(9); 12 C.F.R. §226.18(m); <u>Jackson v. Check-N-Go of Illinois, Inc.</u>, 99 C 7319, 1999 U.S. Dist. LEXIS 20210 (N.D.Ill. 1999), later opinion, 193 F.R.D. 544, 2000 U.S. Dist. LEXIS 8352 (N.D.Ill. 2000); <u>Gibson v. Bob Watson Chevrolet-Geo, Inc.</u>, 112 F.3d 283 (7th Cir. 1997) (all disclosures must be accurate).  Specifically, Long Beach's failure to disclose the security interest violates 15 U.S.C. §1638 (a) (9) which states:

**[sec]§ 1638.    Transactions other than under an open end credit plan [TILA § 128]**

**(a) Required disclosures by creditor**

**For each consumer credit transaction other than under an open end credit plan, the creditor shall disclose each of the following items, to the extent applicable: . . .**

**(9) Where the credit is secured, a statement that a security interest has been taken in (A) the property which is purchased as part of the credit transaction, or (B) property not purchased as part of the credit transaction identified by item or type. . .**

Likewise, implementing Federal Reserve Board Regulation Z provides, 12 C.F.R. §226.18:

**Content of Disclosures**

**For each transaction, the creditor shall disclose the following information as applicable: . . .**

**(m) <u>Security interest.</u> The fact that the creditor has or will acquire a security interest in the property purchased as part of the transaction, or in other property identified by item or type. . . .**

7

These interests must be disclosed on the TILA disclosure statement.  "[C]ourts have required the Disclosure Statement to track the security interest granted by the security agreement." In re Stoneking, 99 B.R. 892, 894 (Bankr. C.D. Ill. 1989).  If the security agreement (mortgage) grants a security interest in personal property, the disclosure statement must so specify.

**B**.     **Long Beach's Security Interest In Plaintiffs' Personal Property Was Not Disclosed At All.**

The TILA disclosure statement Long Beach provided to Mr. Mason and Ms. Watkins disclosed merely that they was giving a security interest in the real property located at 2802 N. 56th, Milwaukee WI 53210."  (Cmpl., Ex. C). But in addition to a mortgage, Long Beach had plaintiffs sign Ex. B to the Complaint, a "1-4 Family Rider/Assignment of Rents."  A rider to the mortgage, the 1-4 Family Rider is a form document.  The version of the 1-4 Family Rider that plaintiffs signed purports to create a security interest not only in plaintiffs' real property but also in all of their personal property located at their address.  Long Beach's 1-4 Family Rider states:

> **A.   ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.**  In addition to the property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property.... Ex. B [emphasis added].

This interest, which literally encompasses plaintiffs' clothes, books, jewelry, automobile, personal papers and photos, etc., was not disclosed on plaintiffs' TILA disclosure statement.

By failing to disclose its security interest in all or virtually all of plaintiffs' personal property ("goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the property"), Long Beach violated TILA and Regulation Z. Romaker v. Crossland Mtge. Corp., 1996 U.S. Dist. LEXIS 6490 (N.D.Ill 1996); Williams v. Gelt Financial Corp., 227 B.R. 590, 1999 U.S. Dist. LEXIS 12512 (E.D.Pa.1999), aff'g, 232 B.R. 629,

1999 Bankr. LEXIS 356 (Bankr. E.D.Pa. 1999). Failure to disclose the full extent of the security interest created by the loan documents clearly violates TILA under Seventh Circuit authority. Teel v. Thorp Credit, 609 F.2d 1268 (7th Cir. 1979); Van Jackson v. Check-N-Go of Illinois, Inc., 1999 U.S.Dist. LEXIS 20210 (N.D.Ill.1999), later opinion, 193 F.R.D. 544 (N.D.Ill. 2000).

C.    **Long Beach's Interest in All of Plaintiffs' Personal Property Is Not a Mere "Incidental" Interest**.

The issue in this claim is whether TILA and Regulation Z required Long Beach to include the items listed in the 1-4 Family Rider in the TILA disclosure statement. TILA and Regulation Z require that in closed-end credit transactions, such as mortgages, the lender must include in the TILA disclosure statement all property in which the lender will acquire a security interest. 15 U.S.C. § 1638(a)(9); 12 C.F.R. § 226.18(m). Regulation Z defines "security interest" as:

> **An interest in property that secures performance of a consumer credit obligation and that is recognized by state or federal law. It does not include incidental interests such as interests in proceeds, accessions, additions, fixtures, insurance proceeds (whether or not the creditor is a loss payee or beneficiary), premium rebates, or interests in after acquired property."**

12 C.F.R. § 226.2(a)(25).

Long Beach is correct that TILA does not require disclosure of incidental interests,[1] but wrong that the Rider includes mere incidental interests. The security interest Long Beach took by means of the 1-4 Family Rider includes "goods of every nature whatsoever located in, on, or used, or intended to be used in connection with the Property." This expansive interest includes far more than incidental interests. This would include all of plaintiffs' personal property, including their

---

[1] The official commentary to Regulation Z expressly excludes "incidental interests, interests in after acquired property, and interests that arise solely by operation of law" from the definition of "security interest." 12 C.F.R. § 226.2, Supp. 1, at 305.

cars, jewelry, books, personal photos and other goods located "in" or "on" the property.

Regulation Z defines "incidental interests" as "interests in proceeds, accessions, additions, fixtures, insurance proceeds (whether or not the creditor is a loss payee or beneficiary), premium rebates, or interests in after-acquired property." 12 C.F.R. § 226.29(a)(25). Thus, whether rider contains mere incidental items or items in which it must properly disclose a security interest depends on whether the items in the rider fit into the categories defined above. The rider does not appear to capture anything that could be considered proceeds, insurance proceeds, or premium rebates. That leaves fixtures, accessions, additions, interests in after-acquired property. But for Long Beach to succeed, all of the items in the rider must fall into one of these categories—if any of the items in the rider does not fall into one of these categories, then the rider encompasses more than mere incidental interests and Long Beach would have been required to disclose a security interest in those items.

The crux of Long Beach's argument is that the interest taken by its 1-4 Family Rider is limited to fixtures, which Regulation Z does not require lenders to disclose on the disclosure statement. But the plain language of the Rider indicates that the interest in plaintiffs' property is much more expansive. There simply is no such limiting language in the Rider. Rather, the Rider: 1) specifically includes "goods of every nature whatsoever" that are "located" or "used" on the property or merely "connected" with it, both "now" or "hereafter;" and, 2) defines these goods as "including, but not limited to" a long list of specific fixtures. Compl., Ex. B. The language is carefully drafted to include property beyond fixtures, i.e., personal property.

Neither TILA nor Regulation Z defines "fixture," so whether specific items can be defined as fixtures is determined by applying state law. 12 C.F.R. § 226.2(b)(3). As Long Beach

10

indicates, whether personal property is a fixture under Wisconsin law is determined by applying a three-part factor test.  Premonstratension Fathers v. Badger Mut. Ins. Co., 46 Wis. 2d 362, 367 (1970).  Notably, this test is identical to the three-part factor test used in Illinois and applied in Leon, where the court held that the items in this exact same rider were not all fixtures.  Leon, 164 F. Supp. 2d at 1038 (citing A & A Market, Inc. v. Pekin Ins. Co., 306 Ill. App. 3d 485, 488 (Ill. App. Ct. 1999).  And just as in Illinois, the most important factor is intent in determining whether an item is a fixture under Wisconsin law, which the court in Leon found lacking in this exact rider.  Leon, 164 F. Supp. 2d at 1038-9; Premonstratension Fathers, 46 Wis. 2d at 371.  Accordingly, Long Beach's argument that the Rider removes the intent component from consideration is as misplaced under Wisconsin law as it would be under Illinois law and must fail.

In both Leon and Navara, the courts could not conclude as a matter of law that the rider necessarily created mere incidental interests and thus denied the defendants' motions to dismiss.  Leon, 164 F. Supp. 2d at 1039; Navara, No. 05 C 864, 2006 U.S. Dist. LEXIS 4908, *23-24.  Notably, the rider at issue in both of those cases is the very same rider at issue in this case.  Long Beach has offered the court nothing new in this case to warrant breaking from Leon and Navara.  Thus, the court should deny Long Beach's motion to dismiss Count II.

Long Beach also argues that the Leon court erred when it failed to consider whether the items in the rider were accessions, additions or after-acquired property, as listed in Regulation Z, 12 C.F.R. § 226.2, Supp. 1 at 305.  But Long Beach failed to mention that this argument  was considered and disposed of in short order in Navara.  No. 05 C 864, 2006 U.S. Dist. LEXIS 4908, at *24-27.  In Navara, Judge Filip stated, "the language in the 1-4 Family Rider is sweeping, and it contains no language suggesting that the property covered by the security instrument is limited to

11

'accessions, [sic] 'additions,' or even 'after-acquired property.'" <u>Id</u>. at 27.  Accordingly, plaintiffs

urge this Court to decide that the Rider contains items correctly categorized as security interests,

which require disclosure, rather than as mere incidental interests and deny Long Beach's motion to

dismiss.

**III.    PLAINTIFFS ARE ENTITLED TO RESCIND THE LOAN BECAUSE LONG
BEACH FAILED TO PROVIDE PROPERLY DATED COPIES OF THEIR
NOTICES OF RIGHT TO RESCIND.**

Plaintiffs seek to rescind their mortgage because they were not provided with copies

of their notices of right to cancel that clearly disclosed the final date by which to cancel their loan,

in violation of TILA and Regulation Z.   15 U.S.C. § 1635; 12 C.F.R. § 226.23.   TILA was enacted

for the purpose of facilitating "meaningful" disclosure of credit terms.  15 U.S.C. § 1601(a).  The

purpose of the three-day rescission period is to give consumers the opportunity to reconsider the

risks and benefits of a transaction which would encumber title to their home.   Consequently, the

rescission right is absolute for three business days.   To ensure that consumers understand this

important right, TILA requires creditors to provide consumers with "clear and conspicuous" notice

of the right to rescind the loan.   15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(b)(1).   Regulation Z

requires delivery of two notice of right to cancel forms and requires that the forms "clearly" disclose,

among other information, the final date to cancel the loan.   12 C.F.R. § 226.23(b)(1)(v).

In this case, plaintiffs did not receive copies of the notice of the right to cancel that

disclosed the final date by which they could cancel the loan at their September 2005 closing.  Rather,

they received notices without the final date to cancel filled in.  Because of this, defendants violated

15 U.S.C. § 1635 and 12 C.F.R. § 226.23(b).  <u>Payton v. Ocwen</u>, 2003  U.S. Dist. LEXIS 18366, *9

(N.D. Ill. Oct. 10, 2003) (stating, "[t]he failure to provide two completed copies of the notice of the

right to rescind is a basis for rescission.").

It would be inappropriate for the court to consider the copies of the notice of right to cancel attached by Long Beach to its motion to dismiss because "it does not meet the narrow exception of documents considered part of the pleadings." <u>Reese v. Hammer Financial Corp.</u>, No. 99 C 0716, 1999 LEXIS 18812, *8 (N.D. Ill. Nov. 29, 1999). In <u>Reese</u>, the court considered this exact scenario and determined that the defendant's copy of the notice of right to cancel "merely raises questions regarding the factual circumstances surrounding the delivery of the Notice of Right to Cancel to the [plaintiffs] -- questions which would be inappropriate for this Court to pursue in this motion to dismiss." <u>Id</u>.

Although what Long Beach claims is its file copies of the notice of right to cancel may be filled out, that merely creates "a rebuttable presumption of delivery thereof," 15 U.S.C. § 1635(c), and not conclusive evidence of delivery. In this case, Mr. Mason and Ms. Watkins could overcome the presumption on summary judgment or at trial through their detailed testimony. And their testimony alone can be sufficient to overcome this presumption. <u>See, e.g.</u>, <u>Williams v. Bank One</u> <u>(In Re Williams)</u>, 291 B.R. 636 (Bankr. E.D. Pa. April 3, 2003).

Additionally, the borrower's copy of the notice of right to cancel controls here. As the court pointed out in <u>Rowland v. Millikin Bank of Decatur</u>, 812 F. Supp. 875, 879 (C.D. Ill. 1992), TILA disclosures must be made "clearly and conspicuously in writing *in a form that the consumer may keep*." 12 C.F.R. § 226.17(a) (emphasis added). In so stating, the court relied on <u>Smith v. No. 2 Galesburg Crown Finance Corp.</u>, 615 F.2d 407, 418 (7th Cir. 1980), where the court held that the borrower's illegible copy of mandatory TILA disclosures was dispositive of the issue, and not the lender's legible copy, stating, "[n]othing can be more central to the entire scheme of

13

TILA than the notion that disclosures made must be legible. The required disclosures become meaningless if the consumer is unable to decipher them." Thus, whether Long Beach's copy is properly completed is not the issue—what matters is the condition of Mr. Mason and Ms. Watkins' copies of the notice of right to cancel.

And even if they had, Long Beach supplies no evidence that its dated copies are in the same condition as when plaintiffs signed them and not that they were simply filled in later. In signing the notices, plaintiffs merely attested that they each received two copies of a notice of right to cancel—not that they received dated copies. (Compl., Ex. A).

Accordingly, this Court should deny defendants' motion to dismiss Count I.

## CONCLUSION

For the reasons stated above, this Court should deny defendants' motion dismiss.

Respectfully submitted,


s/Michael J. Aschenbrener
Michael J. Aschenbrener

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Al F. Hofeld, Jr.
Michael J. Aschenbrener
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)

## CERTIFICATE OF SERVICE

     I, Michael J. Aschenbrener, hereby certify that on January 18, 2008 a copy of the foregoing PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

**Lisa M Arent**

Whyte Hirschboeck Dudek S.C.

555 East Wells Street

Suite 1900

Milwaukee, WI 53202

414-978-5438

ATTORNEY TO BE NOTICED


**Nathan A Fishbach**

Whyte Hirschboeck Dudek SC

555 E Wells St - Ste 1900

Milwaukee, WI 53202-3819

414-273-2100

414-223-5000 (fax)

LEAD ATTORNEY

ATTORNEY TO BE NOTICED

**Kenneth R. Nowakowski**

Whyte Hirschboeck Dudek S.C.

544 East Wells Street

Suite 1900

Milwaukee, WI 53202

414-273-2100

knowakowski@whdlaw.com

LEAD ATTORNEY

ATTORNEY TO BE NOTICED


**Scott T. Schutte**

Howrey LLP (CH)

321 North Clark Street

Suite 3400

Chicago, IL 60610

(312)222-9350

schuttes@howrey.com

LEAD ATTORNEY

ATTORNEY TO BE NOTICED


     s/ Michael J. Aschenbrener
     Michael J. Aschenbrener